**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Case No. 04-cv-01494-LTB-OES

BARBARA BERRY,
　　　　　　Plaintiff,

v.

T-MOBILE USA, INC.,
　　　　　　Defendant.

---

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

　　　　Defendant T-Mobile U.S.A., Inc., (T-Mobile) moves for summary judgment dismissal of

claims by Plaintiff Barbara Berry ("Berry") against T-Mobile for disability discrimination in

violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.*,  age

discrimination in violation of the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. §

621, *et seq.*, and gender discrimination in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 2000e, *et seq.,* as well as for breach of contract and promissory

estoppel. For the reasons stated below Defendant's motion is GRANTED as to all claims.

## I.  BACKGROUND

　　　　This case concerns several claims all related to the termination of Barbara Berry from her

position as a Manager at T-Mobile on November 25, 2003.  T-Mobile is a provider of wireless

phone service based in Colorado. T-Mobile hired Berry in September 2000 to work as a Team

Coach at T-Mobile's  Colorado Springs Call Center ("Call Center"). At the time, she was 51

years old. Her job involved supervising a group of 12 - 15 customer care representatives, whose

job was to handle calls from customers seeking assistance with their T-Mobile phone service. In January of 2002 Berry was promoted to Team Manager, where she supervised six Team Coaches. During the pertinent times related to the events in this case, Berry reported directly to Kevin Kavanah ("Kavanah"), General Manager of the Call Center, or to the Senior Manager William Grier ("Grier.")

Berry was hired as an "at-will" employee. Both Berry's September 2000 and January 2002 employment letters state that her employment status is "at-will," as explained in T-Mobile's Employee Handbook.  The Employee Handbook states on page A-27:

> "8.   <u>Employment at Will.</u> Nothing contained in this Agreement shall alter the status of Employee's employment with Employer, which is 'at will.' Employee acknowledges and understands that Employee's employment is of no specific duration and can be terminated at any time by either Employee or Employer with or without cause, for any reason or no reason, at any time. Employee acknowledges and agrees that any representations to the contrary are unauthorized and void, unless contained in a formal written employment contract signed by both an Executive Officer of Employer and Employee."

This Employee Handbook contains a signature page, signed by Berry on October 23, 2000, which includes in the second paragraph: "I understand that my employment is at will to the fullest extent allowed by law and is entered into voluntarily and may be terminated by me or the Company at any time, with or without cause or notice." The final page of the Employee Handbook, also signed by Berry on October 23, 2000, contains a statement in all capitalized type stating: "EMPLOYEE ACKNOWLEDGES AND AGREES THAT THIS AGREEMENT IS NOT AN EMPLOYMENT CONTRACT AND THAT BOTH EMPLOYEE AND EMPLOYER ARE FREE TO TERMINATE THEIR EMPLOYMENT RELATIONSHIP AT ANY TIME WITHOUT NOTICE OR CAUSE."  The portions of the Employee Handbook made part of the

record contain no language addressing progressive discipline, the grounds for termination of an employee, or the specific procedure T-Mobile must or may use to fire an employee.

Berry's performance on her job was consistently satisfactory, but her supervisors also noted areas where she needed to improve. In her performance review dated April 17, 2002, for her prior work as a customer care representative, she received an overall rating of 3.85 out of a possible 5, with many positive comments about her work performance.

In an appraisal of Berry's work in April and May of 2003, Berry's performance, as measured in a 2003 2nd Quarter Bonus Program Calculator, indicated that her performance was acceptable, but that "the area of quality performance is still the achilles heel for Barbara."  Her supervisor commented that she must work harder to "hold her teams responsible and accountable for the site's #1 measure, quality. Barbara's opportunity with her leadership skill improvement within her peer team is to truly support the company value of 'Team Together.' This has been a regular challenge for her."

On February 3, 2003 Berry was invited to participate in a "very selective and individual specific" Cash Incentive Plan. Under this plan, Berry was entitled to receive two cash incentive payments each totaling up to 15% of her annual base pay. These payments were contingent on the company achieving certain specified performance goals. In August of 2003, Berry received an appraisal listing strengths and "developmental needs," which included "Setting expectations and holding people accountable to those results, synergy with the TM team and Understanding her personal impact on the team's dynamics (personalizing)."  On September 23, 2003 Berry received a letter from T-Mobile informing her of a new compensation system where she and other managers would be paid in part based on past performance, and that her previous six month

performance rating was 3.4, presumably out of 5.

Berry suffers from Multiple Sclerosis ("MS"). According to her neurologist, Dr. Elliot Frohman, Berry was first diagnosed with MS in November of 2000. Frohman's report on a May 2002 visit indicated "no significant difficulties" with "ADLs," (Activities of Daily Living) except for "continued falling." Frohman indicated that this problem is worse later in the day and may be exacerbated by a shift change at work that requires her to work later in the day. Frohman recommended that she use a cane to assist with walking. Frohman's report also indicates that Berry suffers from chronic fatigue, for which he prescribed the medication Provigil.

In Frohman's report of May 2003 he states that Berry has had no falls within the last six months and has started using a cane. The report also indicates that "for fatigue, she has benefitted from" the Provigil. Frohman's notes from his May 2004 visit states that Berry has had "no changes in her ADLs."   Berry stated in her deposition that her MS impacts her life in several ways. Mainly due to the symptom of extreme fatigue, she sometimes "can't put one foot in front of the other, practically," and that her fatigue impacts her "cooking, laundry, shopping and just getting around." Berry asserted that she is frequently too tired to go for a walk, and that she has to rest before she can take a shower. Quite frequently, as often as four or five nights a week, she is too fatigued to cook. She is unable to engage in grocery and other shopping. These episodes of severe fatigue often occur when she is on her feet working all day, such as when she was working at T-Mobile. Provigil helps her "get through the day" when she is suffering these bouts of fatigue. To accommodate her fatigue at home, she tries to rely on her husband and children to cook and she tries to do her shopping, laundry and other chores on weekends when she is less tired from working. Regardless of how tired she feels, she always manages to take a shower.

In 2003, T-Mobile management became increasingly concerned about the performance of the Call Center. Kavanah was directed by his supervisor to, if necessary, make changes in management to improve the Call Center's performance. In this context, Kavanah noted that the teams under Berry's supervision were underperforming other teams. Kavanah was concerned that Berry was not coaching them effectively and not holding them accountable for results. In addition, Kavanah was concerned about Berry's apparent difficulties working with other managers. On October 16, 2003 Kavanah met with Berry specifically to address her coaching effectiveness and directed her to take specific steps to improve her coaching. On October 30, 2003 Kavanah again met with Berry, this time to discuss "her not feeling valued as a Team Manager." Kavanah's notes of the meeting state that "I let Barb know she is valued highly, that several months ago I did have concerns about her ability and willingness to make it with this team. Her marked turnaround has been very obvious, not only from my perspective, but from her peers as well."

Kavanah also states in his notes, in regard to Berry's fear that she might be terminated, "I let her know she would clearly know if her job was in jeopardy, and that any leader would know that before the ultimate in disciplinary action takes place (barring code of conduct violations.)"

In the Fall of 2003, Kavanah made several staff changes at the Call Center. Kavanah demoted Randy Smith from his position as Senior Manager back to his prior position as Team Manager, and promoted Bill Grier from his position as Team Manager to Senior Team Manager. In his role as Senior Manager, the other Managers reported to him rather than to Kavanah in certain circumstances. Kavanah also fired Team Managers Kate Bannister and Kathy Olson, and Team Coach David McMilleon; demoted Cheryl Driskill from Incentive Manager to Team Coach,

demoted Jon Lindau from Team Manager to Team Coach, and transferred Team Manager Chris Stern to another location where he assumed a less senior position. Amidst these other changes, Kavanah fired Berry.

The specific circumstances of Berry's termination are critical to her claims. Shortly after Berry's October 30, 2003 meeting with Kavanah, she told Kavanah that she would need breaks during the day to accommodate fatigue associated with her MS. Berry states that she had previously told both Kavanah and Grier she had MS, and that Kavanah was aware of her condition no later than January of 2003.  Kavanah does not dispute this, but Kavanah and Grier both state that they did not consider Berry to be disabled.  Berry did not request accommodation prior to October of 2003.

Kavanah told Berry that if she needed time off, even for short intermittent breaks during the day, she would need to apply for leave under the Family and Medical leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*  The specific timing of her application for leave and her termination are not completely clear. Berry received her notice of termination on November 25, 2003. Kavanah and T-Mobile Human Resource Manager Cassandra Shephard ("Shephard") state that Kavanah decided to terminate Berry before Berry requested leave. However, they do not state specifically when Kavanah made this decision, and their testimony is not clear as to whether they mean Kavanah decided to fire Berry before she filed her FMLA application or before Kavanah was first aware that Berry would request leave. Berry's leave application is dated November 20, 2003, and she requested the application on November 19, 2003. Berry does not state the specific date of her meeting with Kavanah, where he suggested that she seek FMLA leave, but states that it was a week or two before she requested leave.

6

There is also conflicting testimony about Berry's reason for requesting leave. Berry testifies that she sought leave to accommodate her fatigue induced by her MS. Kavanah affirms that this is the reason Berry gave Kavanah.  However, the Human Resource official who accepted Berry's leave application stated that Berry told her that Berry sought the leave to "keep her job." Berry denied that she made this statement. Kavanah and Shephard state that this alleged statement led them to conclude that Berry was seeking leave under the belief that once approved for FMLA leave, she would somehow be protected from being fired.

Kavanah states that Berry was fired for two reasons: her inability to work with others and her "lack of accountability of holding her team members accountable for results." Her termination notice from T-Mobile states that the reason for her termination was a Reduction in Force ("RIF.") Shephard states that this was a clerical error, since there was no RIF conducted at that time. After pursuing administrative remedies, Berry sued T-Mobile for firing her in violation of the ADA, the ADEA and Title VII, as well as for breach of contract and promissory estoppel.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©.  A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The non-moving party has the burden of showing that there are issues of material fact to be

determined. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Once a properly supported

summary judgment motion is made, the opposing party may not rest on the allegations contained

in his complaint, but must respond with specific facts showing the existence of a genuine factual

issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P.

56(e).  These specific facts may be shown "by any of the kinds of evidentiary materials listed in

Rule 56©, except the pleadings themselves."  *Celotex* at 324.

      If a reasonable juror could not return a verdict for the non-moving party, summary

judgment is proper and there is no need for a trial.  *Id.* at 323.  The operative inquiry is whether,

based on all documents submitted, reasonable jurors could find by a preponderance of the

evidence that the plaintiff is entitled to a verdict.  *Liberty Lobby,* 477 U.S. at 250.  However, I

should not enter summary judgment if, viewing the evidence in a light most favorable to the non-

moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could

return a verdict for that party.  *Id.* at 252; *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494

(10th Cir. 1992).  Moreover, a court may not consider "evidence" that is merely hearsay or

general opinions unsupported by fact.  *Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th

Cir. 1995).

## III.  DISCUSSION

      T-Mobile seeks summary judgment dismissal of all of Berry's claims. Berry's first three

claims – disability discrimination, age discrimination and gender discrimination – all follow the

burden shifting framework established in *McDonnell-Douglass Corp. v. Green,*  411 U.S. 792

(1973). Under this framework, plaintiff bears the initial burden of establishing a prima facie case

of discrimination by a preponderance of the evidence. *Equal Employment Opportunity*

*Commission v. Horizon/EMS,* 220 F.3d 1184, 1191 (10th Cir. 2000). Making this prima facie

case establishes a rebuttable presumption of unlawful discrimination. *Id.* At this stage of the

McDonnell-Douglass framework the burden on the plaintiff is "not onerous" and requires only "a

small amount of proof." *Id.* at 1197. (Internal cites and quotes omitted.)

The defendant then bears the burden of producing a "legitimate, non discriminatory

reason" for this employment decision. *Butler v. City of Prairie Village, Kansas,* 172 F.3d 736,

747 (10th Cir. 1999). If the defendant is able to articulate a valid reason, the plaintiff has the

opportunity to prove that the defendant's stated reason "was in fact pretext." *Id.* at 748. "At all

times, the plaintiff bears the ultimate burden of proving discrimination." *Id.*

Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-

finder could rationally find them unworthy of credence and hence infer that the employer did not

act for the asserted non discriminatory reasons." *Morgan v. Hilti*, 108 F.3d 1319, 1323 (10th Cir.

1997). "Mere conjecture that the employer's explanation is pretext for intentional discrimination is

an insufficient basis for denial of summary judgment." *Id.*   "Even though all doubts concerning

pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary

judgement." *Id.* at 1324.

To demonstrate that the employer's proffered reason for termination is pretext, the

plaintiff does not have to prove that the employer acted illegally or in a discriminatory fashion.

*Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). "Discriminatory animus may be

inferred from the simple showing of pretext." *Id.* Accordingly, for the purpose of defeating a

motion for summary judgment, plaintiff can prevail solely by establishing a prima facie case and

showing pretext.  *Id.*

The parties here addressed the prima facie case for each of these claims individually, and then addressed the next steps in this framework  I will analyze their arguments following the same approach.

A.      Prima Facie Case of Discrimination Under the Americans with Disability Act ("ADA".)

In a case of discrimination under the ADA, a plaintiff makes out a prima facie case of discrimination by showing that "(1) she is disabled within the meaning of the ADA; (2) she is qualified for her employment position; and (3) the defendant discriminated against her because of her disability."  *Doebele v. Sprint/United Management Company,* 342 F.3d 1117, 1128 (10th Cir. 2003). To avoid summary judgment, a plaintiff must initially "raise a genuine issue of material fact on each element of the prima facie case." *Morgan v. Hilti,* 108 F.3d 1319,1323 (10th Cir. 1997).

1.      Is Berry Disabled within the Meaning of the ADA?

In order to qualify as disabled under the ADA, a plaintiff must show either that 1) she has a disability 2) she has a record or history of a disability or 3) she is "regarded" as having a disability. 42 U.S.C. § 12102(2)  The first prong of this definition is considered in three steps. "First, the court must determine whether the plaintiff has an impairment. Second, the court must identify the life activity upon which the plaintiff relies and determine whether it constitutes a major life activity under the ADA. Third . . . the court asks whether the impairment substantially limited the major life activity." *Poindexter v. Atchison, Topeka & Santa Fe Railway,* 168 F.3d 1228, 1230 (10th Cir. 1999) (citing *Bragdon v. Abbott,* 524 U.S. 624 (1998). "Whether a claimed affliction constitutes an impairment under the ADA and whether the identified endeavor constitutes a major life activity are determinations of law for the court to decide." *Id.*     The

burden is on the plaintiff to show specifically both the impairment at issue and the major life activity that is affected by the impairment. *Id.*

T-Mobile does not challenge that Berry's MS constitutes an impairment. Rather, T-Mobile argues that Berry has not demonstrated that her MS has substantially limited her major life activities in a way that satisfies the statutory definition of a disability.

T-Mobile first argues that Berry has failed to show that her MS impacts any valid major life activities ("MLAs.") Berry's deposition and her doctor's reports and deposition state that her MS impacts her ability to engage in shopping, cooking, showering, laundry, house-cleaning, bill-paying and "just getting around." T-Mobile argues that these are not major life activities, and thus cannot justify her status as disabled. However, the Supreme Court has held that "[H]ousehold chores, bathing and brushing one's teeth are among the types of manual tasks of central importance to people's daily lives" and are thus relevant to an analysis of whether an individual is disabled under the ADA. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 US 184, 202 (2002). *See also Ratiky v. Dillon Companies Inc.,* 302 F.3d 1152, 1159 (10th Cir. 2002). Berry's affected activities therefore qualify as major life activities under the ADA.

T-Mobile argues next that even if these are major life activities, Berry has not raised a material fact to show that her MS substantially impacts one of these activities. The standard for whether an impairment constitutes a disability under the ADA is high. The impairment must "prevent[s] or severely restrict[s] the individual from doing activities that are of central importance to most people's daily lives." *Ratiky, supra,* 302 F.3d at 1158. (*quoting Toyota, supra,* 534 U.S. at 197.) This determination also requires considering "the effects of mitigating or corrective measures." *Id.* at 1159.

According to Berry's own deposition, she is able to manage her household chores by postponing them or having her family help, she manages to shower every day in spite of her fatigue, she is able to handle the ambulatory requirements of her job if she is able to take breaks and she can manage her tendency to fall by using a cane. All of her fatigue-related symptoms are substantially reduced when she takes her medication. She has stated that she is reluctant to take her medication because when she works a late shift her medication impacts her ability to sleep. Her doctor recommended additional medication to help her sleep, but Berry apparently resisted taking an additional medication.

This evidence is insufficient to demonstrate "severe" impact to her activities of daily life. Berry has shown that her MS causes fatigue which impacts her quality of life. But she has herself stated that with accommodation, she can handle her job without difficulty; and even without accommodation, the most severe impact to her life is interference with her sleep, which her doctor said could in turn be managed by other medication. Taken as a whole, Berry has not demonstrated that her major life activities have been impacted sufficiently to qualify her condition as a disability.

In the alternative, Berry argues that she was "regarded as" disabled by T-Mobile, under 42 U.S.C. § 12102(2)©. To qualify under this prong of the definition of disability, Berry must show "that her employer regarded her as having an impairment substantially limiting her ability to perform a broad range of jobs." *Doebele, supra,* 342 F.3d at 1133. The employer's mis-perception of an employee's disability must be based on "myth, fear or stereotype, including concerns regarding safety, insurance, liability and acceptance by co-workers and the public." *Id.*

Berry's evidence that T-Mobile regarded her as disabled is that Kavanah and Grier were aware that Berry had MS, and that T-Mobile approved her application for FMLA leave.

This is insufficient to raise a triable issue of fact on whether T-Mobile regarded Berry as disabled. The mere knowledge of an employee's impairment does not establish a "regarded as" claim. *See Steele v. Thiokol Corp.*, 241 F.3d 1248, 1256 (10th Cir. 2001). Similarly, Kavanah's suggestion that Berry apply for FMLA leave does not support this claim because "the leave provisions of the [FMLA] are wholly distinct from the reasonable accommodation obligations of employers covered under the [ADA]," 29 U.S.C. § 825.702(a), and these concepts "must be analyzed separately." 29 U.S.C. §§ 825.702(b). Viewing the evidence most favorably to Berry, the approval of her FMLA leave establishes only that Kavanah was "sympathetic" to Berry's needs, but not that he believed she was disabled. *See Gazaway v. Makita U.S.A.*, *Inc.* 11 F.Supp.2d 1281, 1288 (D. Kan. 1998). Berry provides no evidence that Kavanah, or anyone else at T-Mobile, regarded her as substantially limited in her ability to perform a broad range of jobs. Berry therefore does not present an issue of fact on this issue.

      2.     Is Berry qualified for her job?

T-Mobile asserts that Berry also fails to meet the second prong of this test; that she cannot demonstrate that she was qualified for her job at the time she was fired. It is not clear how strongly T-Mobile contests this issue, since on the gender and age discrimination claims T-Mobile concedes that Berry meets the very lenient test for showing qualification. It is puzzling how it is possible for Berry to meet this test on one issue and not meet it on related issues, when the tests for the claims are identical. Nevertheless, I will review whether Berry is qualified for her job for the purposes of a prima facie case for disability discrimination.

In the Tenth Circuit, a plaintiff in a discharge case may make out a prima facie case that she was qualified for her job by providing credible evidence that "[S]he continued to possess the

objective qualifications she held when she was hired, by her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held her position for a significant period of time." *MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10th Cir. 1991)(reviewing the prima facie case for discrimination under the ADEA)(Internal cites and quotes omitted).

In this case, Berry held her job for more than three years before she was terminated, she testified that she was performing adequately, and her performance appraisals show that despite some performance issues she was meeting expectations. There is nothing in the record to suggest that at the time of her dismissal she lacked the objective qualifications for her position. Berry has thus put forward sufficient evidence to defeat summary judgment on this element of the prima facie case for discrimination.

3.      Did T-Mobile Discriminate Against Berry because she was Disabled?

The final prong of the prima facie test for discrimination requires Berry to "present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan, supra*, 108 F.3d at 1323. (Internal citation omitted.) "This burden is not onerous, but it is also not empty or perfunctory." *Id.* at 1323 -1324. (Internal citation omitted.)  The plaintiff must provide credible evidence that, if the employer remains silent, would be sufficient to prove discrimination as a matter of law. *Id.* at 1324.

Berry contends that the circumstances of her termination satisfy this standard. Berry provides evidence of her satisfactory performance up until October 30, 2003, her subsequent application for FMLA leave and her firing shortly after applying for leave, in conflict with Kavanah's statement that Berry would not be fired without warning. Berry argues that these facts

are sufficient to satisfy her burden to make out a prima facie case of disability discrimination.

Berry relies heavily on *Butler, supra,* 172 F.3d at 736, to argue that this indirect evidence is sufficient to show disability discrimination. In *Butler,* the Tenth Circuit found that the plaintiff satisfied this prong of the prima facie case by providing evidence that after the employee requested an accommodation, his performance appraisals declined, his supervisors began making comments about his inability to complete work on time, that he was fired when others were not and that his complaint of harassment was investigated differently than those of other employees. *Id.* at 749. T-Mobile argues that *Butler* is distinguishable from the present case, because of the length of time the supervisor was aware of plaintiff's condition, because here the supervisor, Kavanah, initially suggested that Berry seek leave and because in *Butler* only the plaintiff was affected by the firing decision, whereas here several employees were affected.

I find these arguments unpersuasive. In *Butler,* eight to nine months elapsed from when the supervisor first learned of the plaintiff's disability and when the plaintiff was suspended. *Id.* at 741-742.  This is not significantly different from the ten months from when Kavanah first learned of Berry's illness to when he fired Berry. While it is true that Kavanah first suggested that Berry seek FMLA leave, it was Berry who first requested the move to an earlier shift to accommodate her fatigue. It is not clear why Kavanah's suggestion of FMLA leave in response to Berry's request for accommodation defeats her claim of discrimination.

In addition, T-Mobile asserts that it could not have engaged in discrimination because the decision to fire Berry was made before Berry requested FMLA leave, even though Berry was not informed of this decision until after she had applied for and been granted leave. The record on this point is less clear that T-Mobile suggests. The record shows that Berry applied for FMLA leave

on November 19, 2003 and was fired on November 24, 2003. Kavanah and Shephard both testify that the decision to fire Berry was made "before" she applied for leave, but do not specify a date. Berry testifies that the meeting with Kavanah where she requested accommodation and he suggested that she request FMLA leave was a week or two before she applied for leave. From this record, there is a factual dispute as to whether Kavanah decided to fire Berry before or after he was aware she would seek FMLA leave.

T-Mobile also argues that the time lapse of ten months between when Kavanah first became aware of Berry's disability and Berry's termination necessarily defeats a claim of disability, relying on *Bones v. Honeywell Intern. Inc.,* 366 F. 3d 869, 879 (10th Cir. 2004). However, in *Bones* the employer provided accommodation numerous times prior to the firing. *Id.* Here, Berry was fired within days of her request for an accommodation. In *Bones* the court concluded that a ten month time lapse combined with numerous instances of accommodation could not create an inference of discrimination. *Id.* Here, construing the evidence most favorably to Berry, the employer received a request for accommodation, and then decided to fire her before the request was acted upon.

I conclude that Berry meets her summary judgment burden upon the final prima facie prong. However, as discussed above, because Berry has failed to meet her burden upon the first prong of the prima facie case, her ADA claim fails.

B.    Prima Facie Case of Gender Discrimination Under Title VII.

T-Mobile argues that Berry has failed to make out a prima facie case of gender discrimination under the McDonnell Douglas framework. T-Mobile states that to make out a prima facie case a plaintiff must show that (1) she is part of the protected class, (2) that she was

16

qualified for the position, (3) that she suffered an adverse employment action and (4) that she was treated less favorably than similarly situated employees, citing to *Fejes v. Gilpin Ventures Inc.,* 960 F. Supp. 1487, 1493 (D. Colo. 1997). Here, there is no real dispute over the first three prongs of this test. Berry is female, T-Mobile concedes that she was qualified for the position (only for the purposes of this claim, apparently), and she was fired by T-Mobile.

The dispute concerns the fourth prong of this test. Berry contends that she was discriminated against because she was fired when other male managers were given the opportunity to accept a demotion or were promoted, in the case of Grier. T-Mobile argues that Berry cannot satisfy the fourth element of the prima facie case because Berry was not similarly situated to the male employees who were given the opportunity to assume a lower status job, or who were promoted, because these other employees had performance records that were qualitatively different from Berry's. T-Mobile states that Grier had a superior performance record to Berry, because he had shown a greater ability to coach his team members. The other Managers who were offered demotion instead of being fired had not demonstrated the same inability to work with others as had Berry. Kavanah states that he believed it would be inappropriate under these circumstances to have Berry work as a peer with individuals she had previously supervised, but did not consider this to be an issue with the other three managers. This difference in past performance between Berry and the other individuals, T-Mobile contends, renders them not similarly situated, thus defeating the fourth prong of the prima facie case.

I find this argument unpersuasive.  Berry and the three other individuals at issue all worked for the same employer, reported to the same supervisor,  were fired by the same supervisor, and lost their positions as Managers at the same time. Moreover, Shephard testified

that all four of these employees lost their positions for a combination of performance issues and conduct issues. "Similarly situated employees, for the purpose of demonstrating employment discrimination, are those employees who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline" as the employee asserting the claim. *Rivera v. City and County of Denver,* 365 F.3d 912, 922 (10th Cir. 2004); *quoting Aramburu v. Boeing Co.,* 112 F.3d 1398, 1404 (10th Cir. 1997). Under these circumstances, I find and conclude that Berry has met her summary judgment burden to show she is similarly situated to the other employees for the purposes of making out a prima facie case.

Moreover, even if I found that Berry was not similarly situated to these other employees, this is not fatal to her prima facie case of discrimination. In the Tenth Circuit, the prima facie case does not require showing that the plaintiff is similarly situated to other employees who were not fired. *Equal Employment Opportunity Commission v. Horizon/CMS Healthcare Corporation,* 220 F.3d 1184, 1195 n.6 (10th Cir. 2000). *See also Orr v. City of Albuquerque,* 417 F.3d 1144, 1151-1152 (10th Cir. 2005). T-Mobile's argument that Berry was not similarly situated to the employees who were demoted more properly belongs in the second prong of the McDonnell Douglass framework – providing evidence of a non-discriminatory rationale for the decision to fire Berry. Evidence that an employee failed to meet an employer's criteria for job performance cannot be used to defeat a prima facie case when it is also put forward as the legitimate reason for the firing decision. *Horizon/CMS, supra,* 220 F.3d at 1193. To allow such evidence to defeat the prima facie case in effect "puts the cart before the horse." *Orr, supra,* 417 F.3d at 1151-1152.

I therefore conclude that Berry has met her burden to make a prima facie case that she was discriminated against due to her gender under Title VII.

C.   Prima Face Case for Age Discrimination under the ADEA

T-Mobile argues that Berry cannot make out a prima facie case of age discrimination. To make out a prima facie case, Berry must show that she is 1) within the protected age group, 2) doing satisfactory work, 3) discharged and 4) her position was filled by a younger person. *Rivera, supra,* 365 F.3d at 920.  T-Mobile only disputes the fourth element of this test, arguing that Berry was replaced by someone within the protected class, Karen Willis who was aged 43 when she became Berry's permanent replacement. Berry, conversely, argues that her replacement was Jeff Edmonds, who was 29 at the time of Berry's dismissal and is outside of the protected class.  T-Mobile asserts that Edmonds was only an interim replacement, and that Willis was Berry's permanent replacement.

Under these facts, Berry has satisfied the fourth prong of this test. The factual dispute over whether Edmonds or Willis replaced Berry is legally irrelevant. The prima facie case for age discrimination requires only that Berry be replaced by someone younger, not by someone outside of the protected class. *Perry v. Woodward*, 199 F.3d 1226, 1137 (10th Cir. 1999)(recognizing that rule requiring that plaintiff be replaced by someone outside of the protective class was "specifically rejected by the Supreme Court.") There is no dispute that both Edmonds and Willis were younger than Berry. Berry has thus made out a prima facie case for age discrimination.

D.   T-Mobile's Legitimate, Non Discriminatory Reason

Once a plaintiff makes out a prima facie case for discrimination, the burden then shifts to the defendant to show a legitimate non discriminatory reason for his action. As discussed above, plaintiff has failed to establish a prima facie case for disability discrimination but has established a prima facie case for age and gender discrimination. I will nevertheless analyze the remaining

19

elements of the McDonnell-Douglass burden-shifting framework for all three claims of discrimination.

T-Mobile argues that it fired Berry because she failed to hold her team accountable for performance standards and because she had difficulty in teamwork with other managers. These issues are documented in Berry's performance appraisals going back several years. Berry does not contest that she had been advised of these issues in her performance. T-Mobile has thus satisfied its burden under this step in the burden-shifting framework.

E.      Pretext

Once a defendant has offered a legitimate non-discriminatory reason for firing a plaintiff, the burden shifts back to plaintiff to show that this reason is pretext. The plaintiff must show "that there is a genuine issue of material fact as to whether the employer's proffered reason for the challenged action is pretextual – i.e. unworthy of belief." *Randle, supra,* 69 F.3d at 451.  The plaintiff need not show that defendant's actual motive is discriminatory. *Id.* At the summary judgment stage it is sufficient to show that defendant's stated motive for firing plaintiff is pretextual, from which a jury might infer a discriminatory motive. *Id.* at 453. Here, Berry must establish a genuine issue of fact that T-Mobile's rationale for its decision to fire her is based on inconsistencies that could lead a jury to believe T-Mobile acted out of discriminatory motives. Berry has failed to do this.

Berry offers as evidence that her termination was pretext for discrimination based on age, gender and disability that she was performing well in her job up to three weeks prior to her termination, that the proffered reason for her termination – her inability to work well with co-workers – was identified as no longer an issue prior to her termination and that her termination

was in conflict with the official policies of her employer. Moreover, Berry asserts that she was assured three weeks prior to her termination that she would have warning if her job was in jeopardy, and that she received no notice prior to being fired. Finally, Berry contends that T-Mobile has offered conflicting justifications for her termination.  Berry asserts that this evidence, combined with her evidence put forward in her prima facie case, is sufficient to raise an issue of fact regarding pretext and thus satisfies her burden to defeat summary judgment.  I disagree.

Berry does not dispute that she had been advised and counseled about the deficiencies in her performance. She also does not dispute that teamwork and accountability were priorities for T-Mobile. It is true that Kavanah advised her October 30, 2003 that she would know if her job was in jeopardy and that her interpersonal problems were no longer an issue. However, Kavanah has also testified that he received information after the October 30, 2003 meeting  that led him to conclude that her interpersonal issues had not been resolved. Even if Berry does dispute that these issues persisted, she has offered no fact to dispute that Kavanah perceived these issues to be present when he decided to fire her. At most, these facts suggest that Kavanah acted unkindly or unfairly to her, but they do not show discriminatory animus or an inconsistency in Kavanah's rationale for her termination.

Berry's termination form indicates that she was fired due to a RIF and not for poor performance. But Shephard testified that this was a clerical error, that no RIF was in place at this time, and that Berry was in fact fired for conduct and performance issues. While this might technically constitute an inconsistency in T-Mobile's stated rationale, it is not material because Berry produced no other evidence to suggest that there was a RIF in place and offers no fact to suggest that the reference to a RIF is anything other than a clerical error. This discrepancy does

not constitute an inconsistency sufficient to show pretext.

Finally, Berry also states that she was fired in violation of T-Mobile's policy for terminating staff. Berry has provided no evidence that such a policy existed in writing, while T-Mobile has provided written documents demonstrating the absence of such a policy, and showing that  employees are routinely terminated without warning or lower levels of discipline. Berry's sole evidence of a policy of progressive discipline that was not followed in her firing are Shephard's comments regarding T-Mobile's general practice not to terminate employees with no history of performance or conduct issues unless they violate the company Code of Conduct, which Berry did not do. Shephard explicitly stated that T-Mobile does not have a progressive discipline policy, and the record shows that Berry had conduct and performance issues prior to her firing.  In sum, the evidence provided by Berry does not present a fact issue to dispute T-Mobile's rationale, or to show discrimination.

I therefore find and conclude that Berry has not shown that T-Mobile's stated rationale for firing her is pretextual, and has thus failed to defeat summary judgment on her claims for disability discrimination, gender discrimination and age discrimination.

F.     Breach of Contract

Berry argues that her termination constitutes breach of an implied employment contract with T-Mobile. Berry contends that despite her signing an employment agreement that specified the at-will nature of her employment, T-Mobile's employment and disciplinary procedures create an implied employment contract which T-Mobile breached when it fired her in violation of its own procedures.

Berry relies on a series of Colorado cases that establish that under certain circumstances,

an employee handbook that describes procedures for discipline and termination can create an implied contract overcoming an employment arrangement that would otherwise be at-will. *Continental Airlines, Inc., v. Keenan*, 731 P.2d 708, 711 (Colo. 1987). Such a handbook can overcome at will employment status under certain conditions. First, the plaintiff must show that the procedures in the manual were part of the employment offer and that the plaintiff accepted employment or continued employment in reliance on these provisions. *Mariana v. Rocky Mountain Hospital & Medical Service,* 902 P.2d 429, 434-435 (Colo. Ct. App. 1994), *aff'd* 916 P.2d 519 (Colo. 1996). Second, a plaintiff can show an employment relationship if the manual contains no disclaimer or only an inconspicuous disclaimer. *Id.* Third, even in the presence of such a disclaimer, an employment agreement may be created if the manual's procedures for termination are mandatory. *Id.* Finally, even if there is a disclaimer and the termination procedures are discretionary, the issue of the existence of an employment relationship is a jury question if the plaintiff provides evidence that the employer treated the disciplinary provisions of the employment handbook as mandatory. *Id.*

Berry is not able to satisfy any of these elements. First, she has provided no evidence that the employment handbook at issue in this case has any language referring to termination or discipline procedures. Berry attempts to rely instead on testimony by Shephard that T-Mobile followed an unwritten policy of progressive discipline. The doctrine Berry relies on has only been applied to written employee manuals, and Berry cites no authority extending this doctrine to unwritten employment practices.

Second, Berry offers no evidence that this unwritten policy was the basis of her employment or her continued employment.  Third, the employment letter she signed contained a

conspicuous statement of her at-will status, and the employment handbook itself contains such a

disclaimer in highlighted type. Fourth, neither the handbook nor Shephard's testimony suggests

that the general practice Shephard alludes to is in any way mandatory or binding on T-Mobile.

Finally, Berry has failed to raise a fact question on whether T-Mobile treated the practice as

binding or mandatory. Shephard's testimony, construed most favorably to Berry, does not suggest

that she or Kavanah considered themselves bound by any written or unwritten progressive

discipline policy.

In sum, Berry has failed to raise an issue of fact on the issue of creation of an employment

agreement. Her claim for breach of contract therefore fails.

G.      Promissory Estoppel

For similar reasons, Berry has failed to raise a claim of promissory estoppel. Berry argues

that an employee can enforce an employer's personnel policies even if the employee cannot make

out a breach of contract claim if the employee can show that the "employer should have

reasonably expected the employee to consider the employee manual as a commitment from the

employer to follow the termination procedures, that the employee reasonably relied on the

termination procedures to his detriment, and that injustice can be avoided only by enforcement of

the termination procedures." *Continental Airlines, supra*, 731 P.2d at 712.

However, for promissory estoppel as for breach of contract, Berry has offered no evidence

that any written procedures exist, or that any unwritten policies exist that were binding on

management.  She therefore cannot establish that she could reasonably have relied on such written

or unwritten policies as a commitment from the employer. For these reasons, Berry's claim of

promissory estoppel also fails.

24

For the reasons stated above, it is therefore ORDERED that Defendant's Motion for Summary Judgment is

1) GRANTED, as to Plaintiff's first claim for relief, gender discrimination;

2) GRANTED, as to Plaintiff's second claim for relief, disability discrimination;

3) GRANTED, as to Plaintiff's Third claim for relief, age discrimination;

4) GRANTED, as to Plaintiff's fourth claim for relief, breach of contract;

5) GRANTED, as to Plaintiff's fifth claim for relief, promissory estoppel; and

6) The above action is DISMISSED with costs awarded to Defendant.

**DONE and ORDERED,** this ___28th___ day of October, 2005 at Denver, Colorado.


___s/Lewis T. Babcock_____
United States District Chief Judge